UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES MICHAEL KENNY,
#265257,

        Plaintiff,                  Case No. 23-12588
                                                HON. BERNARD A. FRIEDMAN

v.

HEIDI WASHINGTON, et al.,

        Defendants.

_____/

**OPINION AND ORDER DISMISSING THE COMPLAINT**

I.     Introduction

James Michael Kenny is currently incarcerated with the Michigan Department of Corrections ("MDOC"). He commenced this action against several MDOC officials pursuant to 42 U.S.C. § 1983. Kenny alleges that the officials violated the Fourth and Eighth Amendments as well as the Prison Rape Elimination Act. Because Kenny fails to state a claim upon which relief may be granted, the complaint must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

II.    Background

Kenny names eight defendants in his complaint: MDOC Director Heidi Washington, corrections officers Keller, L. Spaulding, and Beyer, deputy warden L. McRoberts, grievance coordinator Lawson, resident unit manager M. Brockway,

and assistant resident unit supervisor B. Porter. His allegations center on three incidents that occurred during his incarceration at the Gus Harrison Correctional Facility.

The first incident occurred on August 8, 2023, when Kenny was transferred from the Macomb Correctional Facility to the Gus Harrison facility. He claims that corrections officer L. Spaulding handcuffed his arms behind his back for 30 consecutive minutes until they were briefly removed to allow him to undergo a full body scan. Officer Spaulding then ordered Kenny to submit to a strip search. Kenny refused, claiming that the fully body scan rendered the strip search unnecessary. A few minutes later, corrections officer Beyer approached him. Kenny told her that he was uncomfortable submitting to a strip search and that it was unnecessary. Kenny claims that officer Beyer threatened to "gas" and "rush" him if he refused to cooperate. (*Id.*, PageID.6.) The situation resolved after a different corrections officer arrived and allowed Kenny to remain in his underwear during the search.

The second incident occurred on August 21, 2023, when Kenny was summoned to assistant resident unit supervisor B. Porter's office. Before entering, Kenny alleges that corrections officer Keller "uncomfortably frisked" him and "brushed his left hand over the top of Plaintiff's left buttocks." (ECF No. 1, PageID.4.). This "infuriated" Kenny, who "reacted by making a face thereby

repressing his wrath and additionally traumatizing him." (*Id.*) Porter informed Kenny that she requires everyone to be frisked before entering her office as a security precaution. (*Id.*) Kenny claims that the incident "scarred" his mental health. (*Id.*, PageID.5).

The last incident occurred on September 19, 2023. On this occasion, Kenny asserts that officer Keller frisked him again and "brushed Plaintiff's left buttocks." (*Id.*).

Thereafter, resident unit manager Brockway conducted a hearing on a misconduct ticket that Spaulding previously issued to Kenny for refusing to submit the strip search. Brockway found Kenny guilty and imposed a seven-day loss of privileges. Kenny now seeks (1) $23 million in punitive and emotional damages, and (2) an injunction of future pat-down and strip searches at the Gus Harrison Correctional Facility.

III. <u>Legal Standards</u>

Kenny has been granted leave to proceed with this case without prepaying the filing fee. (ECF No. 6). Under the Prison Litigation Reform Act of 1996 ("PLRA"), the Court is required to *sua sponte* dismiss an *in forma pauperis* complaint before service if it determines the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C.

§ 1915(e)(2)(B). A complaint is frivolous if it lacks an arguable basis in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). While notice pleading does not mandate particularized factual allegations, it does require more than bare assertions of legal conclusions. *Id.*

To state a federal civil rights claim, a plaintiff must allege that (1) he was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978). A *pro se* civil rights complaint is to be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

IV. <u>Analysis</u>

    A. *Eighth Amendment Violation*

Kenny claims that the pat-downs, the strip search, and corrections officer Beyer's verbal harassment all violated the Eighth Amendment.

"[T]he Eighth Amendment prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation omitted) (internal quotation marks omitted). To succeed on an Eighth Amendment claim, a prisoner must establish two elements, one objective and one subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective component requires a prisoner to show that the conduct was "sufficiently serious." *Rafferty v. Trumbull County, Ohio,* 915 F.3d 1087, 1094 (6th Cir. 2019) (quotation omitted). This "is a contextual inquiry that is responsive to contemporary standards of decency." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quotation omitted). The subjective component requires that the defendant acted with a "sufficiently culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Kenny first alleges that officer Keller "uncomfortably frisked" him on two occasions, both times touching Kenny's buttocks. But "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quotation omitted). "Minor isolated incidents of touching, even

5

if coupled with offensive sexual remarks, do not rise to the level of an Eighth Amendment violation." *Solomon v. Michigan Department of Corrections,* 478 F. App'x 318, 320 (6th Cir. 2012); *see also Tuttle v. Carroll County Detention Center*, 500 F. App'x 480, 482 (6th Cir. 2012) (deeming allegation that officer grabbed a detainee's genitals and "squeezed them really hard" during a pat-down search is too "subjective and vague" to state a claim).

Here, the contact with Kenny's buttocks was incidental to the pat-down search and not accompanied by improper remarks. This conduct falls far short of alleging a colorable Eighth Amendment violation.

Kenny's claim that the strip search violated his rights under the Eighth Amendment is unavailing as well. "The Cruel and Unusual Punishments Clause protects inmates against maliciously motivated searches and intentional harassment of even the most hardened criminals." *Fugate v. Erdos*, No. 21-4025, 2022 WL 3536295, at *13 (6th Cir. Aug. 18, 2022) (quotation omitted). In other words, the Eighth Amendment "safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment." *Id.* (quotation omitted).

Kenny alleges no facts demonstrating that the search was intended as punishment or motivated by malicious intent. According to the complaint, the search was conducted in accordance with a prison policy that subjects inmates to

6

body searches after they transfer from a different correctional facility. And prison officials ultimately permitted Kenny to remain in his underwear during the search. (ECF No. 1, PageID.7.) Together, these allegations do not amount to a plausible Eighth Amendment violation.

Kenny's assertion that corrections officer Beyer threatened to "gas" and "rush" him if he did not submit to a strip search does not either rise to the level of an Eighth Amendment violation. Allegations of verbal threats, standing alone, are insufficient to state a claim under section 1983. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim . . ."). And the Sixth Circuit Court of Appeals has held that even a corrections officer's verbal threats to sexually assault an inmate, standing alone, do not violate an inmate's constitutional rights. *See Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004). Therefore, none of Kenny's allegations cross the line into constitutional malfeasance.

B.   *Fourth Amendment Violation*

Kenny next alleges that the strip search violated his rights under the Fourth Amendment. The Fourth Amendment to the United States Constitution protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV.

7

While "convicted prisoners . . . retain some Fourth Amendment rights upon commitment to a corrections facility," they do not "possess the full range of freedoms of an unincarcerated individual." *Bell v. Wolfish*, 441 U.S. 520, 558, 546 (1979).

"[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* Prison officials must "be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgement are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 547.

Even still, strip searches performed in a correctional setting must be "conducted in a reasonable manner." *Id.* at 560. Courts must evaluate "the need for a particular search against the invasion of personal rights that the search entails." *Id.* at 559. The Sixth Circuit Court of Appeals looks to the following criteria when evaluating reasonableness:

> (1) the nature of the intrusion, considering the scope, manner, and location of the search; (2) the need for the search, giving due deference to the correctional officer's exercise of her discretionary functions; and (3) whether the search was reasonably related to legitimate penological interests by weighing the need against the invasion.

*Williams v. City of Cleveland*, 907 F.3d 924, 935 (6th Cir. 2018) (citations and quotations omitted). "[A] strip search, by its very nature, constitutes an extreme

8

intrusion upon personal privacy, as well as an offense to the dignity of the individual." *Stoudemire v. Michigan Department of Corrections*, 705 F.3d 560, 572–73 (6th Cir. 2013).

In this case, Kenny was permitted to remain in his underwear during the search, no one else was present except for the corrections officers, and there is no indication that the search was otherwise conducted in a manner offensive to his dignity. What is more, prison officials had legitimate penological interests in (1) strip searching Kenny after he transferred from another correctional facility, and (2) patting him down before meeting with prison employees. *See Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010) (finding that jail policy of strip searching all transferees was constitutional); *see also Reynolds v. City of Anchorage*, 379 F.3d 358, 362 (6th Cir. 2004) (stating that prisons have a legitimate interest in preventing the flow of contraband and strip searches are a reasonable means of accomplishing that goal).

For all these reasons, Kenny has not plausibly established that he suffered any violation of his Fourth Amendment rights.

C. *Supervisory Liability*

Kenny's claims against MDOC supervisory officials are more straightforward. His allegations against Heidi Washington stem exclusively from her job as MDOC's Director. The doctrine of *respondeat superior*, however, does

9

not impute section 1983 liability to supervisory personnel, *see Monell v. Department of Social Services of New York*, 436 U.S. 658, 691-95 (1978), unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir. 1982). Here, Kenny fails to allege any specific conduct that would support a finding that Washington directly participated in, encouraged, or implicitly authorized or approved the alleged unconstitutional violations.

Kenny's claims against grievance coordinator Lawson and deputy warden McRoberts are based on their responses to his grievances. Yet section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The acts of one's subordinates are not enough. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008). Other than the mere failure to act, Kenny does not allege specific conduct

that would support a finding that either Lawson or McRoberts authorized or approved any form of unconstitutional misconduct.

As a result, all the causes of action asserted against Washington, Lawson, and McRoberts must be dismissed.

D. *Prison Rape Elimination Act*

Kenny also fails to state a claim under the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq*. Although the Sixth Circuit has yet to address whether the PREA creates a private cause of action, numerous district courts in this circuit maintain that it does not. *See McLaurin v. Kabat,* No. 23-cv-11212, 2023 WL 5939820, at *1 (E.D. Mich. Sep. 12, 2023) ("[T]he PREA does not create a private cause of action for prisoners or other individuals."); *Perry v. Warden Warren Correctional Institution*, No. 1:20-cv-30, 2020 WL 3396317, at *6 (S.D. Ohio Jun. 19, 2020) (same).

Other federal appellate courts adopt this same view. *See Krieg v. Steele*, 599 F. App'x 231, 233 (5th Cir. 2015) ("[A]ny claim raised under the PREA is properly dismissed as frivolous."); *McRae v. Myers*, No. 22-1821, 2023 WL 2423590, at *3 (7th Cir. Mar. 9, 2023) ("[T]hough PREA is a federal law, it does not create a private cause of action."); *Johnson v. Garrison*, 859 F. App'x 863, 863-64 (10th Cir. 2021) (affirming the district court's holding that the PREA does

11

not create a private right of action enforceable under section 1983); *Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020) (same).

Because the Court agrees that the PREA does not create a private right of action, Kenny cannot state a plausible claim for relief under the statute.

### E. Misconduct Proceeding

Kenny lastly asserts that resident unit manager Brockway violated his due process rights by imposing a seven-day loss of privileges for refusing to strip naked during his intake search. (ECF No. 1, PageID.8.).

The Fourteenth Amendment's Due Process Clause protects individuals against the deprivation of life, liberty, or property without due process. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "[T]hose who seek to invoke its procedural protection must establish that one of these interests is at stake." *Id.* An inmate does not have a protected liberty interest in connection with prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486-87 (1995).

Kenny does not allege that the results of his prison disciplinary proceedings would inevitably affect the duration of his sentence. Nor does the loss of privileges constitute an "atypical and significant" hardship in relation to the

ordinary incidents of prison life. *See Meeks v. Washington*, No. 21-2670, 2022 WL 18144109, at *2 (6th Cir. July 29, 2022) (holding that 30-day loss of privileges did not constitute an atypical and significant hardship); *Ingram v. Jewel,* 94 F. App'x 271, 273 (6th Cir. 2004) (fourteen-day loss of privileges did not impose an atypical, significant deprivation); *Dixon v. Morrison,* 2013 WL 6512981, *7 (W.D. Mich. Dec. 12, 2013) (fifteen-day loss of privileges did not impose an atypical, significant deprivation implicating due process).

Because Kenny's misconduct conviction did not extend the duration of his sentence or pose some other atypical hardship, his due process claim cannot proceed further. Accordingly,

IT IS ORDERED that the complaint (ECF No. 1) is dismissed with prejudice.

IT IS FURTHER ORDERED that the Court declines to certify an appeal from the judgment because it would be frivolous and not taken in good faith. 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

IT IS FUTHER ORDERED that Kenny's motion for photocopies (ECF No. 3) is denied as moot.

**SO ORDERED.**

Dated: December 11, 2023
    Detroit, Michigan

s/Bernard A. Friedman
Bernard A. Friedman
Senior United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on December 11, 2023.

**James Michael Kenny, #265257**
GUS HARRISON CORRECTIONAL FACILITY
2727 E. BEECHER STREET
ADRIAN, MI 49221

s/Johnetta M. Curry-Williams
Case Manager